May it please the Court, I'm Scott Kibble representing Appellant, Sonoma County Office of Education, and with me is Co-Counsel Nancy Klein. And I wish to reserve five minutes for rebuttal, if I may. In our view, the issue of mootness is a flexible doctrine, and as the Supreme Court said in the United States Parole Commission case, it has shifting and uncertain contours. Here, I'd like to address the mootness question in terms of the posture of the case as it stands today, and then move to the mootness question with respect to the lower courts. I think it's important that you highlight the difference between the posture of the case as decided by the district court and its posture before us. Yes, Judge Fletcher. In the lower court, the lower court determined that because my client had settled the underlying due process hearing, that that rendered moot the challenges that my client was bringing to the systematic policies and procedures of the Special Hearing Office. And we tried to argue in the lower court, as we are arguing also in State court, as you saw by the request for judicial notice that we filed, that the Special Education Hearing Office has conducted these hearings in ways that are arguably unlawful and do not comply with State regulations. The lower court believed that we did not have a private right of action, that we needed to exhaust our administrative remedies by going through to a final decision under the IDEA in that specific due process hearing, even though we argued that there was no exhaustion requirement because it would be futile since a hearing officer in that particular setting could not render a decision on systematic policies and procedures that were employed statewide by the hearing office. The hearing officer office right now is not hearing. So let's get to the next question. What do we do about that? Okay. We might agree completely with you as to the district. We might agree with you completely as to the district court's failings, but it's in quite a different posture now. The posture now, Judge Fletcher, is that Sonoma County Office of Education, as a public entity in California, is still subject to the policies and procedures of the contractor, whichever entity that might be, that has a contract or in this situation an agreement with the California Department of Education, and that these policies and procedures will be in place even after the contract with CEHO apparently ends on December 31st. Are the policies and procedures that you're complaining about written policies or procedures or practices? They are both, Judge Berzon, and, in fact, in the answer in the State court complaint, CEHO admitted that they employed policies and procedures that had not been lawfully adopted as regulations under California law. Do we have any reason to know that those whatever is – first of all, I don't still understand whether those are written as opposed to just practices. But I also don't understand why you say that they're going to continue to apply. This seems totally amorphous at this point, until we know what's going to continue to apply and how the new administrators or hearing officers are going to proceed. Well, and this is why we had hoped in the lower court to ascertain what these procedures were and how they were being applied and whether they were lawful or not. Well, I understand that. But now we have a new entity, all right? So why – you asserted, but I need to know the basis for the assertion, that the same either written and or nonwritten but usual practices are going to continue. What basis do we have for believing that? Well, to begin with, we do not know that the Special Education Hearing Office will not soon re-enter after December 31st into a contract with the Department of Education. It has been the sole contractor since 1989 to 2005. And in fact – Well, if that occurs in the future, then we have an entirely different situation. And what we have here is whether there is mootness. And why isn't the situation here where there's a change in that relationship that doesn't render this moot? Totally. Well, Judge Gibson, I would argue that there are certain exceptions to the mootness doctrine that do apply here. For example, the capable of repetition evading review exception is one in that the State of California awards these contracts for one year or two years or three years. And so, for example, if my colleague, Ms. Klein, has an objection to a policy or procedure with the Office of Administrative Hearing, which is under an interagency agreement today to conduct these hearings, and then we bring that to the district court and it's dismissed and we bring it to the Ninth Circuit, it is very likely or there's a reasonable possibility, shall I say, that the Office of Administrative Hearing is going to dismiss it by the time we reach the Ninth Circuit. And that's the issues that we're presenting with the Special Education Hearing Office are policies and practices that we would argue are still existing in these hearings that CEHO is conducting until December 31st and until we have our day in court where a court analyzes whether these policies and procedures need to be lawfully adopted as regulations, the questions are unresolved. I'm still having a hard time knowing, understanding why we think that on January 1st, I really, I just need some specific advice as to what basis there is for believing that on January 1st, with a new contract or at least for a while, there, the same practices and procedures will be followed. Well, the hearing office and now currently the Office of Administrative Hearings has not moved to adopt any specific regulations to address some of the issues both in federal court and state court. And so, I mean, it is conjecture I acknowledge that the identical practices may be continuing. We're here because we think that we should have our day in court in terms of being able to challenge systematic due process infirmities and that without reaching these issues through an exception to the mootness doctrine or alternatively deciding that the mootness doctrine would allow a challenge to the underlying policies of the agency rather than a specific hearing in a specific due process situation. That part may make sense, but the problem is we have, as Judge Fletcher said at the beginning, the question of whether we can bring a case of the kind you tried originally is one thing. The question of whether we can, as you say, conjecture that there's anything alive about your actual controversy over what procedures are being followed is another because we don't know of any basis that I'm hearing now for believing the same procedures will be followed. I mean, in a way you've had at least a minor victory, right? The agency that you were so unhappy with isn't going to be doing the hearings anymore. On the contrary, Judge Brezon, our case has never been against the Special Education Hearing Office. It is against the these informal policies and procedures, and therefore, the concern continues regardless of who the contractor is. This is not a situation where the Special Education Hearing Office has said even though they we've contested the loss of the contract, even though the Department of Education rescinded the contract to the Office of Administrative Hearings and instead replaced it with an interagency agreement, we will never reenter the bidding to do. That's a different issue. I mean, it seems to me you have two bases for trying to argue that there isn't mootness. One is that the same agency can come back. That's one. But the other, and the one that I thought you were more focused on, because the second is plainly quite contingent, is that somehow these policies are traceable back to the governmental agency and the ultimately responsible governmental agency, which is not a defendant in this case anyway, is it, or is it? It is not, Judge Brezon. So how can you go forward against the Special Education Hearing Office, which isn't anymore the contractor? If this Court were to remand to the district court and the district court were to hear the case, although it's unlikely that it would be resolved before December 31st, CEHO is still a contractor and Sonoma County is still a, you know, eligible to be a party to these due process hearings. And so although the timing is problematic, I acknowledge CEHO is still a live party in this action as of today. And do you have any hearings pending still? We do not have any hearings pending, no. But I would argue that because our challenge is to the systematic procedures and policies, we would have a private right of action as we briefly discussed in our brief in response to the standing objection raised by CEHO. And therefore, our standing to assert a claim against these systematic due process infirmities is separate and distinct from the necessity of having a pending due process hearing. And that is why we argued that the exhaustion requirements were inappropriate. Let me understand that. Are you bringing a damages suit? No. This is purely a declaratory relief action. Finally, I believe that the exhaustion arguments have been briefed and I'd be happy to answer any questions. The private right of action issue, we were asked by the lower court the night before the hearing to argue it, but the lower court limited its decision to mootness. I'd be happy to address either of these issues if the court, you know, would like to hear. I think the briefing is adequate. Thank you very much. Good morning, Your Honors. I'm Joy Sacrum representing the California Special Education Hearing Office. Also present today is Jane Reed who represents Real Party and Interest, BH. I guess if you want to hear about the mootness issue after CEHO lost the contract, I feel relatively speechless. I think the essence is what Mr. Kivel just said. This has never been against CEHO. He just said that. This has never been against CEHO. This has been against the way perhaps that they believe the State Board of Education or the California Department of Education, which are the entities responsible for the system, have allowed it to progress. And it's been CEHO's position at the district court and here as well that we're just not the proper party. We're here today. We're gone tomorrow. There's no evidence, and it would be highly speculative to say that CEHO is going to jump back into the contract or that CDE is even going to permit that. So it appears to me at this point that the declaratory relief would be declaring nothing and have no effect on anybody, CDE and the State Board of Education are not here, and CEHO is no longer going to be doing any hearings. And also I'm not sure that Sonoma County Office of Education is authorized or has standing to represent the districts, the 10 or so, that may still be under CEHO's jurisdiction until December 31st. They brought a claim. They settled it with the real party in interest. I think the case is moot for that reason, and now it's moot because our policies or practices or secret rules or underground regs, whatever they are, just are not going to exist. We have no idea whether OH will follow those or not. But I gather that CEHO is not representing that it isn't going to bid in the future.  You're not representing that your client is not going to bid in the future for the contract. You may. Well, I'm not – I can't represent one way or the other because it's really dependent upon – CDE has decided not to go out to contract, which, you know,  there have been a whole lot of political things going on in the background. The state attorneys have been suing for the job, saying that under the state constitution, you know, the State Department of Education can't contract that out. We've had two lawsuits from Sonoma County saying CEHO's doing it all wrong. My reading, having been around an awful long time, is that CDE is saying we don't want to do this and play this game anymore. We're going to go interagency agreement route, get out of the litigation, and let another state agency do this. So I think they're – But is what you're saying that the wrong parties are here to decide these issues? That's what – I argue that at the district court level, that wasn't the –  But I said all along, they're complaining, for example, in the First Amendment complaint, you know, 10 or 12 of the paragraphs say that these practices that we use, you know, for handling motions or, you know, determining whether we'll admit late evidence, et cetera, haven't been put in regulations according to the State's Administrative Procedures Act. Well, we're a contractor. CEHO's a private party. It has no right to develop regulations in the first place, and we have no clout to make the State Board of Education develop regulations. What we do have is an obligation under the contract to run a very, very, very big system. Over 2,000 cases filed a year. Over 400, you know, go to hearing. Over 2,000 orders, interim interlocutory orders and rulings are rendered a year, and we have an obligation to do that, whether the State Board and CDE develop regulations or not. As you said, the issue has always been, has the State the obligation to, you know, definitively write out, you know, when we can grant continuances, how we will admit evidence, when we will handle motions, how long we will allow parties to speak, et cetera. These are the little practices of CEHO with which the school districts have a beef, and, again, we have no ability to put those in regulations. So, yes, to answer your question shortly, we're the wrong party. CDE, State Board of Education are the ones they should have been complaining to, and, by the way, they did take my advice from the Ninth Circuit brief that I wrote and went to state court, and they're arguing now whether or not CDE and the State Board need to develop regulations, and they have the proper parties there. Thank you very much. Thank you. Do you want to add anything? Yes, if I may take two minutes. First of all, the contracts for CEHO have been extended on various occasions, and, actually, their current operation is an extension of their previous contract, and so it's not unreasonable to assume that the contract may be extended or modified in some way. There is no specific time or term on the Office for Administrative Hearing interagency agreement in terms of our knowledge. And I — I'm sorry. I'm not understanding. Okay. Are you suggesting that they will, in fact, not cease doing the hearings on December 31st? Are you suggesting that they may come back again after that? I'm suggesting both, Judge Verzon, that, you know, given the history of the State Department of Education's contracts with CEHO, it is certainly within reasonable probability that CEHO's contract will be modified or a new contract will be issued. Have they ever canceled it, affirmatively canceled it before as opposed to not extending it, not extending the time? Never. CEHO has had the sole contract under the Education Code from 1989 to 2005. The Office of Administrative Hearings was directed to apply for the special education contract, and so it was — this is not something that we have any confidence would — will exist six months from now. But the — I guess I was asking something slightly different. I'm sorry. My understanding is you were saying from the history of this relationship that their contracts have been extended. But have they ever been extended immediately upon having been affirmatively canceled as opposed to simply not extending? My understanding here is that it's not just a question of nobody signed the contract for post-December 31st. It's that the State agency has declared that they aren't going to be the contractor after December 31st and that they're going to go to another system. Is that correct? Yes. Has that ever happened before? No, it has not. It has not. And, Judge Berzon, you had raised a question about whether the California Department of Education was defending this case, and I'd like to address that. We went to Federal court for a temporary restraining order because of the underlying facts of the administrative hearing, and we made the decision for Eleventh Amendment issues and related issues that we wanted to address specifically what the Special Education Hearing Office was doing and that that was separate and distinct from doing battle with the State of California in terms of regulations. CEHO, as the sole contractor under the Education Code Section 56504.5, we argue, stands in the stead of the State of California, and therefore, we felt that we could go into court and challenge their policies and practices. And finally, the County of San Diego Ninth Circuit case, I think, recognizes that the IDEA encompasses rights for all parties, including the public entities, and those rights include the rights to procedural due process. You know, underlying all this, and I don't know that we need to address it because we — is the question, and I don't know whether anybody's interested, is do public entities have due process rights? Pardon me? Do public entities have due process rights? Well, we would like to take up that issue because we feel that that is the most critical issue in this whole case, and we were prepared to argue it in the lower court because the Deptford, New Jersey case and the County of San Diego Ninth Circuit case are really the only two cases that we've been able to identify which looked at that specific issue and asked, was the IDEA's legislative intent strictly to give rights to parents and guardians of students? I see. But that's a statutory question. It's not a constitutional question. Well, I wouldn't raise constitutional standing issues. Okay. Thank you very much. Thank you very much. The Court will take a 10-minute recess and be back to hear the last case. Thank you very much.
judges: B .Fletcher, Gibson , Berzon